IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| L.S. o/b/o Z.C., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:24-cv-174-TES-CHW |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | Social Security Appeal |
| | : | |
| Defendant. | : | |
| | : | |

### REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of the Social Security Administration denying B.S.'s application for benefits filed on behalf of Z.C., a minor. As discussed below, substantial evidence supports the Commissioner's determination that the claimant does not qualify for disability benefits. Therefore, it is **RECOMMENDED** that Plaintiff's motion to remand (Doc. 10) be **DENIED** and the Commissioner's decision be **AFFIRMED**.

  I.   Background

Claimant Z.C. is a minor born on November 19, 2015. (R. 213). The claimant's grandmother, B.S., applied for Title XVI disability benefits on the claimant's behalf on April 19, 2022, alleging a disability onset date of May 28, 2021, due to seizures, speech impediment, post-traumatic stress disorder, and headaches. (R. 66, 146, 213, 228). After the application was denied initially and on reconsideration at the state agency level of review (Exs. B2A, B3A, B3B, B5B), Plaintiff, the claimant's mother, requested further review before an administrative law judge (ALJ). (R. 78); (Ex. B6B).

At a video hearing before the ALJ in June 2023, Plaintiff clarified that she filed for social security because the claimant had seizures and was "not learning what she's supposed to learn and she forgets." (R. 89–90). Following that hearing, the ALJ issued an unfavorable opinion, concluding that the claimant was not disabled. (R. 60). Plaintiff subsequently requested further review before the Appeals Council, but in April 2024, the Appeals Council declined Plaintiff's request for further administrative review. (R. 1).

Plaintiff now seeks judicial review of the ALJ's decision, arguing that the ALJ did not properly assess evidence in its finding that the claimant did not have a "marked" limitation in any domain and that new medical evidence presented to the appeals council warrants remand. As discussed below, the record supports neither of Plaintiff's arguments.

## II.     Standard of Review

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether the decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation and citation omitted). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Id.* (citation omitted). Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Consequently, the Court's role in reviewing claims brought under the Social Security Act is quite narrow.

The Commissioner's findings of law are given less deference. Those, the Court will consider *de novo*. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022).

**III.    Evaluation of Disability**

Persons under the age of 18 are disabled for purposes of receiving Title XVI benefits if they have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

When analyzing the issue of disability for persons under the age of 18, the ALJ uses a three-step sequential evaluation procedure. 20 C.F.R. § 416.924(a). At step one, the ALJ determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). At step two, if the child is not engaged in substantial gainful activity, then the ALJ determines whether the child has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.924(c). At step three, the ALJ determines whether the child's impairment or combination of impairments meets or is medically or functionally equal to one of the listed impairments, and otherwise satisfies the relevant duration requirement. 20 C.F.R. § 416.924(d).

To determine whether the child's impairment functionally equals a listed impairment, the ALJ must consider six "domains," which are "broad areas of functioning intended to capture all of what a child can and cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To satisfy the "functional equivalence" standard,

the child must have either "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

## IV.     Medical Record

Plaintiff's challenge in this case concerns the ALJ's consideration of the claimant's school evaluations and psychoeducational results. Therefore, this medical summary focuses on the evaluations as they appear in the record. However, the entire medical record has been reviewed in preparation of this recommendation.

The claimant has a history of seizures, headaches, and educational impairments. *See* (Ex. B3F). Treatment notes from Children's Healthcare of Atlanta indicate in the seizure history section that the claimant had seizures as early as early as five months old. (R. 472). The first treatment notes that indicate an assessment of seizures are from March 2020. (R. 457). Treatment notes indicate further that by January 2021, the claimant had a history of seizures and headaches. (R. 451). Four times between January and April 2022. the claimant visited her neurologist, Dr. Abdul Qadir, who assessed the claimant with absence epileptic syndrome, intractable, without status epilepticus. (R. 419, 421, 425–26).

In June 2022, the claimant was admitted for inpatient monitoring for three days. (Ex. B5F). The record notes no seizures during the study and finds that the "long-term EEG in the awake, drowsy and asleep states is within normal limits for age." (R. 485). Following the EEG, Dr. Qadir started the claimant on levocarnitine and continued Depakene, and subsequent treatment records indicate that the claimant has had no seizures since May 2022 (R. 314–15, 526, 601, 709).

In February 2022, the Houston County Board of Education performed a psychoeducational evaluation of the claimant. (R. 342). The claimant was administered several tests. (*Id.*). Relevant to Plaintiff's argument, the claimant scored a 67 in letter-word identification, a 70 in written

4

language, and a 69 in both spelling and writing samples on the Woodcock-Johnson Tests of Achievement, Fourth Edition (WJ-4). (R. 342–43). Following a parent questionnaire completed by Plaintiff, Plaintiff "rated" the claimant on the Adaptive Behavior Assessment System, Third Edition (ABAS-III). The claimant's scores in conceptual (55), social (65), practical (50), and general adaptive composite (53) are classified as "delayed." (R. 344). The claimant's school psychologist concluded that the claimant "will likely encounter significant difficulty learning in a regular classroom environment." (R. 345).

Following the psychoeducational testing, the school system had an Individualized Education Program (IEP) meeting, at which it was noted that the claimant had communication issues but no behavioral issues and did not require an alternative format for instructional materials. (R. 361). The school system concluded that the claimant would receive 900 minutes weekly in a small group setting for reading, writing, and math and 60 minutes weekly of speech services. (R. 377). A teacher questionnaire completed in May 2022 indicated that the claimant was receiving special education services and was performing below her grade level in math and reading. (R. 287–88). A March 2023 teacher questionnaire opined that the claimant performed below grade level in all subjects and had an "obvious problem" or a "serious problem" in all areas of acquiring and using information. (R. 271).

The Houston County Board of Education performed a second psychoeducational evaluation of the claimant in September 2023, one month after the ALJ's unfavorable decision. (R. 51, 60). The claimant scored within the average range for "IQ Composite" and scored a 69 in math concepts/application, 65 in math computation, 62 in letter/word recognition, 65 in reading comprehension, and 55 in written expression. (R. 54). The evaluation indicated further that the claimant was unable to read any words and was not able to write. (*Id.*). The school system created

5

an amended IEP in which it was determined that the claimant would "be dismissed from the Speech Language Impairment program due to her progress in therapy and receiving average test scores on her re-evaluation." (R. 132–33).[1]

Later that month, the claimant underwent a psychological evaluation performed by Dr. Michael Johns. (R. 10). Dr. Johns noted that the claimant seemed "relatively adept at understanding what was being asked of her," and she "displayed variable verbal aptitude." (R. 11–12). Dr. Johns also indicated that the claimant "displayed consistently average performance on tests of verbal reasoning." (R. 13). Her composite scores of 65 in working memory and 63 in processing speed were classified as "extremely low." (R. 12). Dr. Johns opined that the claimant exhibited signs of "Autism-Spectrum Disorder, Level 1, Requiring support, With accompanying cognitive impairments" and "Attention-Deficit/Hyperactivity Disorder, Combined Presentation (provisional)." (R. 18). Dr. Johns recommended that the claimant continue speech therapy and see a therapist. (R. 18–19).

## V. Disability Evaluation in This Case

Following the applicable three-step procedure for childhood disability determinations, the reviewing ALJ issued an unfavorable decision in August 2023. At step one, the ALJ found that the claimant had not engaged in substantial gainful activity since at least February 10, 2022, the application date. (R. 64). At step two, the ALJ found that the claimant suffered from the following severe impairments: "speech/language/articulation disorder, absence epileptic syndrome,

---

[1] In her statement of the facts, Plaintiff notes that in the September 2023 IEP, "the committed determined that [the claimant] would continue to receive 900 minutes of special education instruction in the 'small group setting to address deficits in Reading, Writing, and Math.'" (Doc. 10-1, p. 6). A review of the record before the Court indicates that that language from the committee was from January 2023 and not September 2023. (R. 132–33).

6

borderline intellectual functioning, post-traumatic stress disorder (PTSD), and adjustment disorder." (*Id.*).

Finally, at step three, the ALJ found that the claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that she did not have an impairment or combination of impairments that functionally equaled the severity of the listings. (R. 64–65). In making the latter determination, the ALJ considered the six domains of functioning and determined that the claimant had: (1) a less than marked limitation in the domain of acquiring and using information; (2) a less than marked limitation in the domain of attending and completing tasks; (3) a less than marked limitation in the domain of interacting and relating with others; (4) no limitation in the domain of moving about and manipulating objects; (5) a less than marked limitation in the domain of caring for oneself; and (6) a less than marked limitation in the domain of health and physical well-being. (R. 65). Based on these domain findings, he ALJ concluded that the claimant was not disabled within the meaning of the Social Security Act.

**VI.    Analysis**

Plaintiff argues that (1) the ALJ failed to properly assess the 2022 psychoeducational report in finding that the claimant did not have a "marked" limitation in any domain, and (2) additional evidence submitted to the Appeals Council warrants remand.

A.  <u>Educational Testing</u>

First, Plaintiff argues that "20 C.F.R. § 416.924a(1)(ii) requires the ALJ to consider 'all evidence in the case record' including test scores," and that the ALJ's failure to assess these test scores, along with the ALJ not considering how the claimant would function outside the small classroom setting, warrants remand. (Doc. 10-1, p. 13–15).

7

The specific scores that Plaintiff refers to are the claimant's scores of 67 in letter-word identification, a 70 in written language, and a 69 in both spelling and writing samples on the WJ-4. (Doc. 10-1, p. 12); (R. 343). Plaintiff also refers to the claimant's scores of 50–65 on the ABAS-3. (Doc. 10-1, p. 12); (R. 344). Plaintiff argues that the ALJ did not note those specific scores and that the applicable social security regulations require the ALJ "to consider all the evidence in the case record including test scores." (Doc. 10-1, p. 12, 13).

An ALJ "will consider [the claimant's] test scores together with the other information [the Commissioner] has about [the claimant's] functioning, including reports of classroom performance and the observations of school personnel and others." 20 C.F.R. § 416.926a(e)(4)(ii). While "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [its] decision," there must be a logical bridge between the evidence the ALJ credited and the conclusions it reached. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see Angelita O. v. Kijakazi*, No. 1:20-CV-00034-AJB, 2021 WL 4146085, *18 (N.D. Ga. Sept. 13, 2021). When declining to rely on test scores, the ALJ "will explain [its reasoning] for doing so." 20 C.F.R. § 416.926a(e)(4)(iii)(B).

In this case, the claimant had several scores that fell more than two standard deviations below the norm. (R. 343–44). Plaintiff argues that these scores indicate a marked limitation in the domains of acquiring and using information and attending and completing tasks.[2] Plaintiff's

---

[2] While Plaintiff consistently argues that the ALJ erred in finding a less than marked limitation in the domain of acquiring and using information, Plaintiff only briefly mentions that the ALJ erred in determining the domain of attending and completing tasks—seemingly without any further support or argument. *See* (Doc. 10-1, p. 11–15). Based upon Plaintiff's perfunctory analysis of the attending and completing tasks domain, the Court could find that Plaintiff has waived any challenge to the ALJ's determination in that domain. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (explaining that a party "abandons a claim when he either makes only passing references to it or raises is in a perfunctory manner without supporting arguments and authority") (citations omitted). If so waived, even if the ALJ erred in the domain of acquiring and using information, a finding of marked limitation in only that one domain would be insufficient to establish functional equivalency, and any error by the ALJ would be harmless. *See Diorio v.*

8

argument does not support remand, however, because substantial evidence supports the ALJ's decision. First, the record contains mixed evidence as to the claimant's scores. For example, the ALJ noted the claimant's score on the Differential Ability Scales, 2nd Edition (DAS-2), which measures overall cognitive functioning (R. 68). The claimant's scores on the DAS-2 were 80 in verbal, 85 in nonverbal reasoning, 76 in spatial, and 77 in general conceptual ability. (R. 635). The ALJ acknowledged next that the claimant's scores on the WJ-4 "subtests ranged from delayed to below average, and her scores suggested general cognitive abilities in the well below average to delayed range." (R. 68). The ALJ then considered the opinions of the claimant's teachers regarding the claimant's limitations in the six domains and noted that the "allegations concerning the intensity, persistence and limiting effects of [the claimant's] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 67–68).

"[E]ven if the claimant's testing was two standard deviations below the mean, the ALJ is required to not consider the test scores alone, but 'consider them *together* with the information we have about [the claimant's] functioning to determine whether [the claimant has] a "marked" or "extreme" limitation in a domain.'" *J.M. on behalf of M.D.H. v. Comm'r of Soc. Sec.*, No. 520-cv-329-TES-CHW, 2021 WL 8268060, *3 (M.D. Ga. July 27, 2021) (dismissing the plaintiff's argument that social security regulations required the ALJ to "'explicitly assess[]' the claimant's low standardized test scores") (quoting 20 C.F.R. § 416.926a(e)(1)(ii)). The ALJ was required to "provide sufficient detail so that any subsequent reviewers can understand how they made their findings." SSR 09-1P; *see also Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("Unless

---

*Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). However, out of an abundance of caution, in part due to the Commissioner's briefing on the domain of attending and completing tasks, this recommendation has considered the ALJ's findings of a less than marked limitation in both the domains of "acquiring and using information" and "attending and completing tasks."

the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational"). The ALJ is not required to refer specifically to every piece of evidence, so long as the decision "is not a broad rejection which is not enough to enable [the Court] to conclude that the ALJ considered" the record evidence as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 122 (11th Cir. 2005) (cleaned up); *see Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1275 (11th Cir. 2024) ("[I]t is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses in this circumstance." (internal quotation and citations omitted)); *see Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (explaining that courts must scrutinize the entire administrative record to determine the reasonableness of the Commissioner's factual findings). Because the Court reads the ALJ's decision as a whole, and given the deferential standard of review, there is no basis for the Court to conclude that the ALJ erred in not explicitly discussing the claimant's specific subset scores on one test in its finding of a less-than-marked limitation.

B.  New Evidence

Plaintiff argues next that a psychological evaluation performed by Dr. Michael Johns following the ALJ's decision, an updated IEP, and an updated psychoeducational evaluation warrants remand. (Doc. 10-1, p. 15–19). The Appeals Council found that this new evidence either did not create a reasonable probability of a changed administrative outcome or was not chronologically relevant (R. 2), and therefore, the Appeals Council declined Plaintiff's request for review. (R. 1).

Regulations provide that the Appeals Council "must consider new, material, and chronologically relevant evidence." *Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1320 (11th Cir. 2015) (citations omitted). "Evidence is material if a reasonable probability exists that the evidence would change the administrative result." *Hargress v. Comm'r of Soc. Sec.*, 883 F.3d 1302, 1309 (11th Cir. 2018) (citation omitted). "New evidence is chronologically relevant if it "relates to the period on or before the date of the ALJ's hearing decision."" *Id.* (quoting 20 C.F.R. § 404.970(a)(5)).

In this case, the Appeals Council declined to exhibit the January 17, 2023, educational records after finding that the records did not show a reasonable probability that the outcome of the ALJ's decision would be changed. (R. 2). Plaintiff has not demonstrated that this educational record has a reasonable probability of changing the administrative outcome of this case. This record indicates that the claimant was improving continuously in multiple areas. (R. 95). Critically, nothing in this educational record "undermine[s] the substantial evidence supporting the ALJ's decision." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 785 (11th Cir. 2014) (citations omitted).

As for the Houston County psychoeducational report performed on September 6, 2023, and Dr. Johns' psychological evaluation performed on September 28, 2023, the Appeals Council stated that the additional evidence did not relate to the period at issue, and therefore, did "not affect the decision about whether [the claimant was] disabled beginning on before August 10, 2023." (R. 2).[3] "In short, the Appeals Council declined to consider these new medical records because they were not chronologically relevant." *Hargress*, 883 F.3d at 1309 (no error when Appeals Council declined to consider new evidence because it was not chronologically relevant).

---

[3] The Appeals Council stated that for them to consider Plaintiff's new evidence, Plaintiff would have to file a new claim. (R. 2).

Plaintiff's argument that the new evidence is "chronologically relevant" because "[t]he school testing was done less than one month after the ALJ decision, and Dr. Johns performed his evaluation less than three[] months later" is not persuasive. (Doc. 15, p. 8). 20 C.F.R. § 404.970(a)(5) requires that new evidence "relates to the period on or before the date of the [ALJ's] hearing decision." *Hargress*, 883 F.3d at 1309. Evaluators examined the claimant in September 2023, after the ALJ's decision on August 10, 2023, and nothing in the new records indicate that evaluators considered information relating to the claimant from before the ALJ's hearing decision in formulating these new records. Plaintiff also argues that Dr. Johns' diagnosis of Autism-Spectrum Disorder explains the claimant's functioning difficulties and relates to the ALJ's discussion of the claimant's borderline intellectual functioning, but Dr. Johns' assessment of the claimant occurred after the hearing date, all testing administered in creating the report occurred after the hearing date, and there is no indication that Dr. Johns "evaluated [the claimant's] past medical records when forming [his] opinion." *Hargress*, 883 F.3d at 1310 (distinguishing *Washington*).

Plaintiff cites *Washington v. Soc. Sec. Admin, Comm'r*, 806 F.3d 1317 (11th Cir. 2015), in support of the argument that the evaluation and report are chronologically relevant. In *Washington*, evidence from a new psychologist who examined the claimant after the ALJ decision was found to be chronologically relevant because the psychologist reviewed symptoms and treatment records occurring before the ALJ's decision and because there was no assertion or evidence that the claimant's condition had declined since the ALJ decision. *Id.* at 1322–1323. The Eleventh Circuit limited *Washington* to the specific facts of the specific circumstances to the case. *Id.* at 1323. *Washington*'s limited holding does not support a finding that the school board's psychoeducational evaluation and Dr. Johns' psychological report are chronologically relevant. As noted above, the

claimant was evaluated for both tests in September 2023, after the ALJ's hearing decision, and both reports specifically note the claimant's current functioning as of the date of the reports' publications. *See* (R. 18–20, 59).

Even if the September 2023 psychological evaluation and psychoeducational report are chronologically relevant,[4] Plaintiff has not demonstrated that a reasonable probability exists that the ALJ's decision would have changed. The psychoeducational evaluation notes the claimant's improved scores in cognitive functioning, consistent with the ALJ's notation that the claimant was improving in school. (R. 52–54, 67–68). While other scores indicate low percentile rankings, such scores are consistent with the ALJ's determination that "the claimant has learning difficulties" and subsequent analysis considering the inconsistent medical records. (R. 54, 68–69). Given the record before the ALJ and how the evidence was credited, there is little suggestion, let alone a reasonable probability, that the new evidence would change the outcome of the hearing decision. Therefore, the reports are not material. There is no basis to remand this case for consideration of the psychoeducational evaluation and psychological report.

## CONCLUSION

For the reasons discussed herein, it is **RECOMMENDED** that the Commissioner's decision in this case be **AFFIRMED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Any objection is limited in length to TWENTY (20)

---

[4] Plaintiff's contention that the new evidence "could support a remand as 'new and material' evidence" is unpersuasive. (Doc. 15, p. 8). As explained throughout this report and recommendation, the standard is whether a *reasonable probability exists that the outcome would change*, not that new evidence could support a remand.

PAGES. See M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 3rd day of July, 2025.

s/ Charles H. Weigle\
Charles H. Weigle\
United States Magistrate Judge